**UNITED STATES of America, Appellee,**

v.

**Zack Vance SIMS, Appellant.**

No. 74–2431.

United States Court of Appeals, Ninth Circuit.

April 2, 1975.

David M. Rothman, Beverly Hills, Cal., for appellant.

Chester L. Brown, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

OPINION

Before KOELSCH and KILKENNY, Circuit Judges, and SOLOMON,* District Judge.

KILKENNY, Circuit Judge:

This appeal is from appellant's jury conviction on six counts of violating 18 U.S.C. § 495, by uttering forged United States Treasury checks. Appellant makes only one assignment of error. We affirm.

FACTS

At the time of the conduct in question, appellant was self-employed as a tax preparer in Los Angeles. Between November, 1971, and November, 1972, he arranged to have the United States Treasury mail a number of his clients' tax refund checks directly to him. Testimony at trial showed that none of

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

these six named clients ever received their checks, nor did they authorize appellant to negotiate them. Appellant signed the payees' names, added his own secondary endorsement, and negotiated the checks at a Los Angeles liquor store.

In his defense, appellant testified that the payees had each authorized his negotiation of their checks, an assertion which was directly refuted by testimony at trial. Appellant also claimed he had been legally insane at the time of his acts. Specifically, appellant's insanity defense was based on his alleged religious fanaticism. He attempted to prove that his conduct had been governed by a sincere belief that he had divine guidance and that those who crossed him—such as Government investigators—brought down the wrath of God in the form of California earthquakes. He claimed that his beliefs made him incapable of conforming his conduct to the law's requirements or appreciating the wrongfulness of his acts.

In support of his insanity defense, appellant produced two expert witnesses, a psychologist and a psychiatrist, who had examined appellant. Their testimony was generally favorable to appellant, but inconclusive on the ultimate issue of legal insanity.

The substance of this appeal, however, involves the opinion expressed by a psychiatrist who testified for appellee. His opening testimony revealed that he based his opinion regarding appellant's mental state on his own examination of appellant, other psychiatric reports, and information derived from conversations with Government attorneys and IRS agents. The Government psychiatrist concluded that there was no evidence to support the contention that appellant lacked the capacity to appreciate the wrongfulness of his acts or to conform his conduct to the law. He added that appellant's "excessive amount of religiosity" was not "delusional thinking."

During cross-examination, appellant's counsel questioned the psychiatrist concerning the basis for his opinion, specifically in regard to appellant's pre-1971 conduct, which counsel contended to be free from aberration. "[I]s it a fact . . . that at least from the facts we know, that Mr. Sims had been practicing as a tax preparer, according to information you have, for at least ten years before he had any difficulty with the law [?]" asked appellant's counsel. The psychiatrist then revealed that he had learned from IRS agents that appellant had been investigated for "alleged irregularities" prior to 1971. He added that this information was taken into account in reaching his opinion on appellant's sanity. The information came solely from out-of-court sources.[1]

The court thereupon *sua sponte* admonished the jury to consider the hearsay evidence only ". . . with reference to the basis for the doctor's opinion . . ." and not ". . . in any way in a determination as to whether the defendant did or did not commit the offenses that are charged. . . ."

Appellant moved that the Government psychiatrist's entire testimony be stricken because it was based on hearsay evidence unavailable to appellant prior to trial. The motion was denied, as was appellant's motion for a mistrial, thus forming the basis of this appeal.

## ISSUE

The sole issue on appeal is whether the district court erred in refusing to strike the expert witness' testimony because it was based upon hearsay evidence.

---

1. The hardcore of the testimony here under challenge is as follows:

    \*   \*   \*   \*   \*   \*

"Q Did some investigating agent tell you that Mr. Sims may have been in some difficulty before 1971 with the law?

    \*   \*   \*   \*   \*   \*

"A Yes.

    \*   \*   \*   \*   \*   \*

"Q This was in the private interview with these agents—

A Yes.

Q —that you had, and these private interviews and this private information is one of the reasons you reached this opinion?

A It was taken into account in reaching an opinion, yes."

## LEGAL BACKGROUND

The traditional rule is that an expert opinion is inadmissible if it is based upon information obtained out of court from third parties. United States v. Bohle, 445 F.2d 54 (CA7 1971); Jones, Evidence § 421; 2 Wharton, Criminal Evidence § 519 (1955). The rationale behind this rule is that the trier of fact should not be presented with evidence grounded on otherwise inadmissible hearsay statements not subject to cross-examination and other forms of verification.

However, recent decisions, especially in the Federal courts, indicate there is a strong emerging trend in favor of admissibility. United States v. Williams, 447 F.2d 1285 (CA5 1971) (in banc), cert. denied 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972); Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962) (in banc); State Highway Comm. v. Oswalt, 1 Or.App. 449, 463 P.2d 602 (1970). The new rule has been endorsed as the better reasoned and preferable approach in McCormick, Evidence § 15 (1972). *See also* 3 Wigmore, Evidence § 688 (1970).

The rationale in favor of the admissibility of expert testimony based on hearsay is that the expert is fully capable of judging for himself what is, or is not, a reliable basis for his opinion. This relates directly to one of the functions of the expert witness, namely to lend his special expertise to the issue before him. In so doing, various experts customarily rely on evidence not independently admissible in the courtroom. As the court noted in *Williams, supra,* 447 F.2d at 1290, the opinion, ". . . is regarded as evidence in its own right and not as hearsay in disguise." In a sense, the expert synthesizes the primary source material—be it hearsay or not—into properly admissible evidence in opinion form. The trier of fact is then capable of judging the credibility of the witness as it would that of anyone else giving expert testimony. This rule respects the functions and abilities of both the expert witness and the trier of fact, while assuring that the requirement of witness confrontation is fulfilled.

Fully consistent with this view, though not yet controlling, is Rule 703 of the Federal Rules of Evidence for the United States Courts and Magistrates, effective July 1, 1975, which reads:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." 65 F.R.D. 139, 152.

The rule merely codifies the law recently stated in the above-cited authorities.

It seems logical that an expert, such as a psychiatrist in formulating an opinion in a case such as this, should be permitted to interview the agents who made the investigation leading up to the indictment and secure from them relevant facts developed during the investigation. Because of his professional background, knowledge, and experience, we should, in circumstances such as these, leave to the expert the assessment of the reliability of the statements on which he bases his expert opinion. He should not be precluded, in forming an opinion, from interviewing those who for one reason or another have had occasion to investigate and study the defendant's background. Years of experience teach the expert to separate the wheat from the chaff and to use only those sources and kinds of information which are of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject.

We do not open the gates to a wholesale use of all types of hearsay in formulating expert opinions. We only approve the use of that type of information upon which experts may reasonably rely. This follows the spirit of the Federal Rules of Evidence, *supra.* Upon admission of such evidence, it then, of course, becomes necessary for the court to instruct the jury that the hearsay evidence is to be considered solely as a basis for the expert opinion and not as substan-

tive evidence. This the district court here did *sua sponte.*

### CONCLUSION

After thorough consideration of all relevant factors, we conclude that no error was committed in admitting the expert's opinion. Finding no error, we affirm the district court's conviction of appellant.

Affirmed.