THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HECTOR MAISONET, Defendant-Appellant.

Fourth District    No. 4—85—0302

Opinion filed November 21, 1985.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant, Hector Maisonet, who at the time of the offense involved was an inmate at the Pontiac Correctional Center, appeals his conviction and sentence for committing an aggravated battery upon a guard at the Center. At the jury trial, over defense objection on grounds of materiality, testimony was introduced that at about the same time as the offense, another guard was similarly attacked. Later, without objection, an investigator for the Center testified that in his opinion the two attacks were related. Without objection, the investigator gave the following reasons for his opinion:

"Mainly it was the same organization. The Latin Kings were involved with both incidents. Anyway, the people that were picked out as being the perpetrators were both Latin Kings and then also later we learned that another organization had given the word to hit some officers on that particular day."

No other evidence was introduced that either defendant, or who-

ever committed the other attack, were Latin Kings. We recognize the difficulties of gathering evidence and presenting cases involving offenses committed against prison personnel. Nevertheless, we conclude that the grossly improper nature of the foregoing testimony created plain error requiring reversal and remandment for a new trial.

Defendant was indicted in the circuit court of Livingston County on November 1, 1984. On December 17, 1984, on defendant's motion, the case was transferred to the circuit court of McLean County. At the completion of the jury trial, the judgment of conviction was entered on February 14, 1985. On April 2, 1985, the court sentenced the defendant to four years' imprisonment. On appeal, defendant makes the single contention that introduction of the foregoing evidence deprived him of a fair trial. As indicated, we agree.

The evidence of defendant's guilt was fully sufficient to support the verdict but was not overwhelming. Most of that proof came from the testimony of the victim, Randy Arnold.

Arnold testified: While on duty on August 3, 1984, he was shutting the gate at the level of galleries 7 and 8. After he let two inmates through, he was hit twice on the head from behind. The second blow came from a clothing bag which had a hard object in it. He fell from the first blow, turned to his left and put his hand above his head. He could see the person wielding the clothing bag, and defendant was that person. Defendant and the individual with him went toward gallery 8. Two officers responded to his call for help, and, after locking the gate, he walked down some stairs to meet them. He was bleeding extensively at the time. Later, when shown pictures of some 500 inmates, he picked defendant's picture as being that of the person striking the second blow.

Arnold admitted that he had stated after the attack that the person hitting him with the bag lived in gallery 5. The evidence indicated that defendant lived in gallery 7. Defendant denied attacking Arnold. Both he and inmate Randy Ruiz testified that defendant was in Ruiz' cell on gallery 5 at the time of the offense. However, Officer Kevin Hannon testified to having seen defendant on gallery 7 shortly before the attack. However, Hannon also testified that he was stationed in a position to see part of Arnold's body at the time of the attack, and from where he stood, it appeared that the second blow to Arnold came from a thrown object and not from a clothing bag.

The question of the propriety of the evidence concerning another guard having been injured at about the same time as Arnold was raised in defendant's post-trial motion and argued. The trial court indicated that it was admissible to show defendant's *modus operandi* or

intent. In *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489, the court held that evidence of other offenses by an accused committed in a very similar manner to that for which an accused is on trial are admissible to show *modus operandi* or intent. Here, there was no showing that defendant had committed the other attack. Rather than showing that the apparent intent of the State was to show that defendant was a participant in a Latin King conspiracy to attack guards.

The first testimony concerning the attack on the other guard came from Correctional Lieutenant James Reid, called by the State. He stated that he saw another officer being treated and was told that officer had been attacked by an inmate. The only objection made to this testimony was that it was immaterial. Thus, the hearsay infirmity was probably waived, as was any lack of foundation for the testimony. As we have indicated there might have been some materiality and relevancy to this evidence if properly connected to a conspiracy theory. In any event, at this stage the prejudice to the defendant was slight, because the fact that some officer might have also been attacked would not appear to influence the jury's determination as to whether defendant had attacked Arnold.

Substantial prejudice did result when the State attempted to show the relationship between the offenses through the opinion testimony of Investigator Irvin. We are unaware of any case permitting an opinion to be given by a witness as to whether two offenses of the simple nature of an aggravated battery are related. When such an opinion is based on hearsay, the impropriety seems obvious.

Investigator Irvin's opinion was based on the assumption that defendant and whoever made the attack on the other guard were both members of the Latin King group. Evidence was presented that Hector Sanchez was with defendant at the time of the offense and that he was a Latin King. However, no evidence was presented that either defendant or the other assailant were Latin Kings. Any opinion by the investigator that, because they were both members of the same gang, there would more likely be a relationship between the offenses would be so obvious that neither lay opinion nor expert opinion would be of aid to the jury. See *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809; Cleary & Graham, Handbook of Illinois Evidence secs. 701.1, 702.4, at 442-44, 459-60 (4th ed. 1984); Fed. Rules Evid. 701, 702.

Moreover, the opinion was based on apparent hearsay indicating that defendant and the other assailant were members of the same gang. If Irvin is to be considered a lay witness, clearly no opinion

could be based upon hearsay. Under the circumstances here, he could not base his opinion on hearsay even if he were an expert. Under the doctrine set forth in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, an expert may give an opinion based upon hearsay which is ordinarily and reasonably relied upon in the field of expertise of the witness. The record here gives no indication that Irvin's source of information had this element of reliability.

The major vice in Irvin's testimony, and that which raised it to the level of plain error, was not that the jury heard an improper opinion that the two crimes were related. Rather, the vice was the unsupported assertion that defendant was a Latin King and, therefore, likely to have committed the battery. Irvin's testimony also created an improper innuendo that, because defendant and the other accused were both identified as the attackers, they were guilty of the offenses. The State appears to contend that evidence concerning defendant's gang membership was rendered permissible because the defense produced evidence that Sanchez was a Latin King. The principal issue is not whether evidence of defendant's possible gang membership was proper. The issue is the propriety of the method by which the State attempted to prove it.

We consider error arising from Irvin's testimony even though it was not raised in the trial court because of the power given us by Supreme Court Rule 615(a) (87 Ill. 2d 615(a)). It permits us, under such circumstances, to consider "[p]lain errors or defects affecting substantial rights" in criminal cases. It is appropriate to do so in cases where the evidence is closely balanced or in cases where the magnitude of the error "denies the accused a fair and impartial trial." (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238.) The case here differs markedly from *People v. Hubbard* (1972), 4 Ill. App. 3d 729, 281 N.E.2d 767, and *People v. Abbott* (1969), 110 Ill. App. 2d 462, 249 N.E.2d 675, cited by defendant where prosecution testimony created an inference that the accused might have committed other offenses. Here, the evidence bore not upon the defendant's past conduct but created an unsupported theory that he was part of a group that had conspired to commit the offense. The error deprived him of a "fair and impartial trial."

Accordingly, he is entitled to a new trial. We reverse and remand for such a trial.

Reversed and remanded.

MORTHLAND and SPITZ, JJ., concur.