WESLEY LOVELACE, Plaintiff-Appellant and Cross-Appellee, v. FOUR LAKES DEVELOPMENT COMPANY, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—87—0137

Opinion filed May 19, 1988.—Rehearing denied June 20, 1988.

Stephen Phalen and Tom Leahy, both of Leahy & Donovan, of Chicago, for appellant.

John J. Mangan and Mark W. Monroe, both of Rooks, Pitts & Poust, of Wheaton, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff filed this negligence action in the circuit court of Du Page County against defendant, Four Lakes Development Co. (Four Lakes), to recover for injuries he suffered when he fell while ice skating at defendant's outdoor skating rink in the Village of Lisle. Plaintiff alleged that Four Lakes negligently failed to maintain the ice or to warn plaintiff of its unsafe condition and that his injury was a direct result of defendant's conduct. The jury returned a verdict for Four Lakes, and the trial court entered judgment accordingly. Plaintiff appeals, arguing that the court improperly excluded evidence regarding the closure of other skating rinks on January 4, 1982, the date of plaintiff's injury.

During the trial, James Heffernan testified for plaintiff as an expert in forming and maintaining outdoor ice skating rinks. Heffernan's expertise was acquired during his 40 years of experience as general foreman of maintenance with the Chicago Park District. He had the responsibility each winter for forming and maintaining 22 ice ponds or rinks on the northwest side of Chicago. In preparation for trial, Heffernan reviewed weather records maintained by the United States Department of Commerce for late December 1981 and early January 1982. The records, which were admitted in evidence, contained hourly temperature and precipitation readings recorded at the Du Page Airport and at a weather station in the city of Wheaton. We note Wheaton and Lisle are abutting municipalities. Heffernan testified that it was his opinion that the relatively warm weather and long periods of precipitation recorded on January 4, 1982, and the immediately preceding days, caused the ice in defendant's rink to become rough and easy to crack. He stated that it was his opinion that defendant should not have allowed skating on its rink on the day plaintiff was injured. The court sustained defendant's objection to Heffernan's additional statement that he had closed the 22 ice rinks under his control in Chicago on that date. The court instructed the jury to disregard the remark.

On cross-examination, defendant's counsel produced Department of Commerce weather records containing temperature readings at O'Hare Airport on January 4, 1982, and questioned Heffernan regarding them. Heffernan stated, both on direct examination and during cross-examination, that, during the winter, temperatures are warmer near Lake Michigan than in outlying areas. After reviewing several hourly temperature readings from the O'Hare weather records, however, Heffernan acknowledged that the O'Hare temperatures were a few degrees colder than the corresponding hourly readings from the Du Page Airport and Wheaton stations, which are farther from the lake than O'Hare.

At the close of all the evidence, plaintiff was permitted to make an offer of proof regarding the closure of Heffernan's rinks on the date of plaintiff's injury. Plaintiff argued that defendant's cross-examination regarding temperatures at O'Hare had opened the door to this testimony, because Heffernan's rinks were located close to O'Hare. During his offer of proof, plaintiff offered in evidence Chicago Park District records which Heffernan had maintained for January 1982. The records indicated that the 22 rinks under Heffernan's control were open every day that month except January 3, 1982, when they were only partially open, and January 4, 1982, when they were

closed. Heffernan testified that the rinks are all within 10 miles of O'Hare Airport. In its rulings, made after the offer of proof and in subsequently denying plaintiff's post-trial motion, the trial court concluded that evidence regarding Heffernan's subjective decision to close certain Chicago skating rinks was not material to a determination of whether defendant was negligent in permitting skating on its rink on the day of plaintiff's injury. The court also ruled that the closure of the Chicago rinks was not an appropriate basis for Heffernan's opinion that defendant's rink should have been closed, and the evidence therefore was not admissible to explain the basis for his opinion. Plaintiff contends that these rulings were erroneous.

Plaintiff contends that Heffernan's personal knowledge that he had closed 22 skating rinks in Chicago on the day of plaintiff's injury was one of the facts on which Heffernan based his opinion that defendant's rink should have been closed that day. Plaintiff argues that the evidence was therefore admissible to explain Heffernan's opinion.

In *Wilson v. Clark* (1981), 84 Ill. 2d 186, the Illinois Supreme Court adopted Federal Rules of Evidence 703 and 705. Rule 705 provides that, unless the trial court requires otherwise, an expert witness may render an opinion without first disclosing the facts or data on which that opinion is based. (Fed. R. Evid. 705.) Rule 703 states:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R. Evid. 703.

In *People v. Anderson* (1986), 113 Ill. 2d 1, the supreme court again reviewed Rules 703 and 705 and held that, in addition to being permitted to offer his opinion, an expert, on direct examination, "should be allowed to reveal the contents of materials upon which he reasonably relies in order to explain the basis of his opinion." (113 Ill. 2d at 9.) The court concluded that, because expert opinions based on facts and data meeting the qualifications of Rule 703 are admissible, "it would be both illogical and anomalous to deprive the jury of the reasons supporting that opinion." (113 Ill. 2d at 10.) The court rejected the argument that its holding would create an exception to the hearsay rule where the underlying facts or data revealed by the expert constituted otherwise inadmissible hearsay testimony, because the testimony is not offered to demonstrate the truth of the matter asserted. The court concluded that such evidence does not constitute

hearsay testimony when admitted for the limited purpose of explaining the basis for an expert's opinion. (113 Ill. 2d at 11-12.) The *Anderson* court thus clearly contemplated that its ruling would allow the limited use of otherwise inadmissible testimony.

There is no hearsay issue presented in the case at bar, as Heffernan had personal knowledge of the Chicago rink closings. The issues are related, however, because the trial court found the disputed testimony to be substantively inadmissible as irrelevant to a determination of whether Four Lakes was negligent in failing to close its rink. We will first review that ruling.

■■ Evidence is relevant if it tends to make a fact in controversy more or less probable. (*People v. Free* (1983), 94 Ill. 2d 378, 413; *People v. Monroe* (1977), 66 Ill. 2d 317, 322; *Benson v. Bradford Mutual Fire Insurance Corp.* (1984), 121 Ill. App. 3d 500, 510.) The determination of whether evidence is relevant is within the discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *Chladek v. Albon* (1987), 161 Ill. App. 3d 884, 888; *Benson v. Bradford Mutual Fire Insurance Corp.*, 121 Ill. App. 3d at 510.

■■ In the instant case, Heffernan generally stated that when ice becomes too rough it is sometimes better to close the rink and make new ice than to try to clean off the existing ice. He did not offer any further explanation of the standard he used or the factors he considered in deciding whether his rinks should remain open. Heffernan's rinks were much closer to Lake Michigan than was Four Lakes' rink—a fact which, according to Heffernan's own testimony, would tend to make temperatures warmer and less suitable for ice skating at his rinks than at defendant's rink. Plaintiff also offered no evidence to demonstrate that Four Lakes' rink was as heavily used as the 22 Chicago rinks were. Heffernan testified that on a heavily used pond there will be a greater amount of ice scrapings which will contribute to the formation of rough ice in relatively warm or rainy weather. The only evidence presented regarding the use of defendant's ice rink, however, indicated that it was not heavily used. The Four Lakes' employee who designed and maintained the rink testified that he considered it "a lot of work for very few residents." In fact, plaintiff offered absolutely no evidence which would tend to establish that conditions at the Chicago rinks were comparable to those at Four Lakes' rink on the day of plaintiff's injury. We therefore find that the trial court did not abuse its discretion in concluding that testimony regarding the closure of the Chicago ice rinks was inadmissible as substantive evidence.

■■ However, evidence which is substantively inadmissible may

nevertheless be admissible for the limited purpose of explaining the basis for an expert's opinion. (*People v. Anderson*, 113 Ill. 2d at 11-12; see also *People v. Lang* (1986), 113 Ill. 2d 407, 465-67.) The determinative factor is whether the facts or data constitute information on which the expert "reasonably relies" as a basis for his opinion. (*People v. Anderson*, 113 Ill. 2d at 9.) The *Anderson* court also noted that the trial court has the authority to exclude information if its "probative value in explaining the expert's opinion pales beside its likely prejudicial impact or its tendency to create confusion." (113 Ill. 2d at 12.) It is therefore not enough for the proponent of the evidence to establish the expert's subjective reliance on it in forming his opinion; his reliance must also be reasonable. See, *e.g.*, *People v. Murphy* (1987), 157 Ill. App. 3d 115, 119 (holding inadmissible "inherently unreliable" hearsay statements of the defendant's mother regarding the defendant's violent conduct immediately before he killed the victim); *People v. Maisonet* (1985), 138 Ill. App. 3d 716, 719 (holding that hearsay reports that two crimes were connected and gang-related were not of a type ordinarily and reasonably relied upon by police investigators where there was no indication that the source of the information was reliable); *Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 615 (recognizing the potential for abuse and concluding that disclosure of the facts underlying the opinion should depend upon necessity and trustworthiness as do "all exceptions to the hearsay rule"); *Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 788 (holding that an expert physician's out-of-court conversations with other physicians regarding the adequacy of defendant's product warnings was not information of the type reasonably relied upon by experts in his field where there was no testimony establishing that the other physicians had read the warnings). But see *In re Scruggs* (1986), 151 Ill. App. 3d 260, 263 (holding the hearsay statement of a building manager that the patient had answered her door in the nude and left her keys in the building office admissible and concluding that the "unreliability of the *** anecdotal statements *** does not act to bar their admission, but rather acts merely as a caution as to the reliability of [the expert's] opinion").

■ Where the issue was the admission or exclusion of an expert's entire opinion testimony, the Illinois Supreme Court adopted the position that the trial court should liberally allow the expert to determine what materials are reasonably relied upon by those in his field. (*Melecosky v. McCarthy Brothers Co.* (1986), 115 Ill. 2d 209, 216, citing *Mannino v. International Manufacturing Co.* (6th Cir. 1981), 650 F.2d 846, 853; *People v. Murphy*, 157 Ill. App. 3d at 125 (McNamara, P.J.,

dissenting).) It is the opponent's responsibility to then challenge the sufficiency or reliability of the basis for the expert's opinion during cross-examination, and the determination of the weight to be given the expert's opinion is left to the finder of fact. (*Melecosky*, 115 Ill. 2d at 216-17.) We do not believe that the *Melecosky* ruling should be applied where, as here, the issue is not the admissibility of the expert's opinion testimony, but the propriety of allowing the expert to disclose substantively inadmissible underlying facts to explain his opinion. Such an extension of *Melecosky* would allow the proponent of otherwise inadmissible evidence to summarily circumvent its exclusion if he is able to find an expert to rely upon it in forming his opinion. (See *Henry v. Brenner*, 138 Ill. App. 3d at 615.) Under these circumstances, we believe the more appropriate position is that suggested by Professor Graham: "[T]he proponent of the evidence should be required to satisfy the court both that such items are of the type customarily relied upon by experts in the field, *and that such items are sufficiently trustworthy to make such reliance reasonable.*" (Emphasis in original.) (Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurance of Trustworthiness*, 1986 U. Ill. L. Rev. 43, 75; see also *Melecosky*, 115 Ill. 2d at 218 (Ryan, J., dissenting).) In the instant case plaintiff has not demonstrated that Heffernan's reliance on the disputed evidence was customary in his field or reasonable.

▪ Plaintiff did not produce any evidence to establish that experts in Heffernan's field usually rely on the condition or closure of other rinks in determining whether any particular rink is safe for skating. Nor was the disputed information of a type so commonly relied upon that the trial court might have taken judicial notice that such reliance is usual and reasonable. (See, *e.g.*, *People v. Lang*, 113 Ill. 2d at 467, citing with approval *United States v. Lawson* (7th. Cir. 1981), 653 F.2d 299, 302 (in which the court took judicial notice that the information was of a type " 'reasonably and customarily' " relied upon in the field).) In addition, the trial court concluded that the information was not a reasonable basis for Heffernan's opinion. It appears that the court's concern was not with the reliability of the information, of which Heffernan had personal knowledge, but with its relevance. We see no reason, however, to distinguish a court's exclusion of information that it determines was unreliable (see, *e.g.*, *People v. Murphy*, 157 Ill. App. 3d at 119; *People v. Maisonet*, 138 Ill. App. 3d at 719), from its exclusion of information which it determines was irrelevant. (See, *e.g.*, *Greenwood Utilities Comm'n v. Mississippi Power Co.* (5th. Cir. 1985), 751 F.2d 1484, 1495 (finding that a trial

court may appropriately inquire into the information's relevance as well as its reliability); *Soden v. Freightliner Corp.* (5th. Cir. 1983), 714 F.2d 498, 506 (rejecting the proponent's argument that any concerns about the disputed evidence could have been addressed in cross-examination, by stating that the problem was not merely with the proper weight to be given the evidence, but with its relevance).) As discussed above, we agree with the trial court's conclusion that the condition of the 22 Chicago rinks under Heffernan's control was not probative of whether Four Lakes' conduct in opening its rink was negligent. We therefore find no error in the court's related conclusion, in the absence of evidence to the contrary, that the information was also not relevant to an explanation of the basis for Heffernan's opinion. *Cf. People v. Anderson*, 113 Ill. 2d at 12 (holding that a trial court may exclude information offered by the expert where its probative value is insignificant compared to its likely prejudicial impact).

■ Plaintiff argues that, even if evidence regarding the closure of the Chicago rinks was not admissible to explain the basis of Heffernan's opinion, Four Lakes opened the door to that testimony when it cross-examined Heffernan regarding the temperatures recorded at O'Hare Airport. (See, *e.g.*, *Voga v. Nelson* (1983), 115 Ill. App. 3d 679, 685 (permitting the introduction of ordinarily inadmissible evidence where the opponent of the evidence opened the issue and the proponent will otherwise be prejudiced).) Four Lakes argues that plaintiff has waived this issue by failing to raise it in his post-trial motion, as required by Supreme Court Rule 366(b)(2) (107 Ill. 2d R. 366(b)(2)(iii)). We disagree.

Plaintiff's post-trial motion described the omitted evidence with particularity and made an express reference to his offer of proof, which he made during trial to demonstrate that the evidence was admissible to rebut defendant's cross-examination of Heffernan. Moreover, in denying the post-trial motion, the court did not limit its remarks to the admissibility of the evidence as a basis for Heffernan's opinion. Rather, the court reiterated the position it took at the close of the offer of proof—that the evidence was simply not material to the issues at trial. The issue therefore has not been waived, as it was adequately raised in the post-trial motion and ruled upon by the trial court. See *Thorne v. Elmore* (1979), 79 Ill. App. 3d 333, 339; see also *Patur v. Aetna Life & Casualty* (1980), 90 Ill. App. 3d 464, 466 (noting that a rationale for the waiver rule is that the trial court should be given the initial opportunity to appraise alleged errors and to determine whether a new trial is warranted).

■ We find no merit in plaintiff's contention, however. Four

Lakes did introduce evidence regarding the temperatures recorded at O'Hare Airport on the date of plaintiff's injury. In addition, in his closing argument, Four Lakes' attorney contended that the colder O'Hare temperatures constituted the "official" and more accurate records for the Chicago metropolitan area on that date. However, plaintiff's offer of proof established only that the 22 rinks under Heffernan's control were within 10 miles of O'Hare. While Heffernan testified that in operating his rinks he relied, in part, on weather reports obtained from O'Hare, he also stated that he relied on another weather service which gave him more specific weather conditions at locations around the city. Plaintiff therefore failed to establish that the temperatures recorded at O'Hare were reflective of temperatures at Heffernan's rinks. In addition, as discussed above, Heffernan's testimony indicated that the deterioration of ice is a function not only of temperature, but of how extensively the rink is used. The evidence regarding the closure of Heffernan's rinks therefore remained irrelevant to a determination of defendant's negligence. We additionally note that the court's exclusion of this rebuttal evidence did not result in any prejudice to plaintiff. While plaintiff chose not to do so, the court's ruling did not prohibit him from inquiring, on redirect examination, whether Heffernan would have altered his opinion that defendant's rink should have been closed if he assumed that the O'Hare records were more accurate. We find no error in the court's exclusion of the evidence.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.