# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***In re Commitment of Butler*, 2013 IL App (1st) 113606**

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF JOHNNY BUTLER (The People of the State of Illinois, Petitioner-Appellee, v. Johnny Butler, Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-3606 |
| Filed<br>Rehearing denied | September 20, 2013<br>October 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from respondent's commitment as a sexually violent person, the appellate court held, *inter alia*, that the trial court did not err in refusing to allow prospective jurors to be asked whether knowing of respondent's three convictions for violent sexual offenses would prevent them from being fair and impartial; further, the basis of opinion testimony about respondent's offenses was not improperly argued as substantive evidence by the State and the denial of respondent's motion for a mistrial on that basis was not an abuse of discretion, the denial of defendant's motion for a mistrial due to the State's alleged violation of a motion *in limine* barring testimony concerning a finding that respondent was a sexually violent person was not an abuse of discretion, and the denial of a continuance and an order for a supplemental evaluation did not violate respondent's right to a dispositional hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-80007; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Law Offices of Chicago-Kent College of Law, of Chicago (Daniel T. Coyne and Matthews M. Daniels, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Lindsay Beyer Payne, Assistant Attorneys General, of counsel), for the People.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.

Justices McBride and Howse concurred in the judgment and opinion.

# OPINION

## BACKGROUND

### The Petition

On June 9, 2008, the State filed a petition pursuant to the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 to 99 (West 2010)) seeking to have respondent, Johnny Butler, adjudicated a sexually violent person (SVP) and committed to the care and custody of the Department of Human Services (DHS). The petition alleged that respondent had previously been convicted of three separate sexually violent offenses. Specifically, respondent was convicted of the sexually violent offense of attempted rape under Cook County case number 75 I 4184 and was sentenced to a term of 15 years in the Illinois Department of Corrections. Next, respondent was convicted of the sexually violent offenses of rape and deviate sexual assault as well as the offenses of robbery and aggravated kidnapping under Cook County case number 80 C 3720 and was sentenced to a term of 22 years in the Illinois Department of Corrections. Lastly, the petition alleged that respondent was convicted of the sexually violent offense of attempted aggravated criminal sexual assault as well as the offense of aggravated kidnapping under Cook County case number 97 CR 13916 and was sentenced to 22 years in the Illinois Department of Corrections. The petition further alleged that respondent was presently incarcerated pursuant to the sentence imposed on 97 CR 13916 and was scheduled to be released within 90 days of the filing of the petition. Respondent had been evaluated by a clinical psychologist who had diagnosed respondent as suffering from "Paraphilia Not Otherwise Specified, Non-consenting Persons," and "Personality Disorder Not Otherwise Specified, With Antisocial Features." Finally, the petition alleged that respondent is dangerous to others because said mental disorders make it substantially probable that he will engage in acts of sexual violence.

### Pretrial Proceedings

On July 10, 2008, following a hearing in the circuit court of Cook County, the trial court

found probable cause to believe that respondent was subject to commitment under the Act. Subsequently, and prior to trial, the trial court heard and ruled upon several motions *in limine* as well as respondent's proposed *voir dire* questions. As relevant here, the court granted respondent's "Motion *In Limine* To Limit Use Of Testimony From Opinion Witnesses Regarding Details Of Respondent's Background." This motion specifically requested that the jury be given limiting instruction Illinois Pattern Jury Instructions, Civil, No. 2.04 (2006) (hereinafter, IPI Civil (2006) No. 2.04) and that the State be precluded from using the details of respondent's prior convictions in closing arguments as substantive evidence. In granting the motion, the court indicated that it would give the limiting instruction to the jury when the evidence was introduced and after closing arguments. The trial court further ruled that when discussing the details of respondent's prior background in closing argument, "you really must preface any details with the fact that the doctor relied upon the details to form their opinion." Additionally, respondent's "Motion *In Limine* To Preclude All Testimony Regarding The Respondent's Custodial Status At The DHS" specifically requested that the State be precluded from eliciting evidence that there had been a finding of probable cause to believe that the respondent was a sexually violent person. This request was also granted. Lastly, respondent proposed the following *voir dire* question:

> "You will hear evidence that Mr. Butler has been arrested and convicted for sexually violent offenses on three separate occasions. Having heard such testimony, can you be fair and impartial deciding his case?"

The trial court initially granted this request but later revisited the issue *sua sponte*. The court found that the proposed question too specifically addressed the evidence expected to be adduced at trial. Instead, the court substituted its own *voir dire* question as follows:

> "Knowing that Mr. Butler has already been convicted of a sexually violent offense, can you be fair in determining whether or not he is a sexually violent person in this case?"

¶ 6                                  Jury Trial Proceedings

¶ 7        At trial, the State presented the testimony of Dr. David Suire and Dr. Jessica Ransom and introduced certified copies of respondent's convictions for the sexually violent offences described above. During the testimony, respondent twice moved for a mistrial on the basis that the State's experts violated the court's rulings by referencing the fact that there had been a finding of probable cause in this case. These motions were denied. Respondent presented no evidence. During the State's closing arguments, respondent objected on several occasions to comments made concerning the details of respondent's sexually violent offenses. These objections were overruled. After the jury was instructed as to the law, respondent again moved for a mistrial arguing that the State violated the trial court's rulings *in limine* by referring to the details of respondent's crimes as substantive evidence. The motion for mistrial was denied. The jury found respondent to be an SVP.

¶ 8                                      Commitment

¶ 9        The State immediately moved for an initial commitment order under section 40 of the

Act (725 ILCS 207/40 (West 2010)), and further asked the trial court to make a determination that respondent should be committed to a secure facility for secure care, control and treatment with the DHS. In response, respondent asked that the court schedule a dispositional hearing and for the opportunity to be evaluated so that the court may decide what recommendation to make to the DHS. The court declined to hold a separate dispositional hearing and found that it did not lack sufficient evidence to find that respondent would not be conditionally released at that time. As a result, the court committed respondent to a secure facility of the DHS.

¶ 10                                 ANALYSIS

¶ 11        Respondent appeals, arguing that: (1) the trial court erred by declining to allow prospective jurors to be asked whether they could be fair and impartial knowing that respondent had been convicted of sexually violent offenses on three separate occasions; (2) the State improperly argued basis of opinion testimony concerning the details of respondent's offenses as substantive evidence, his objections thereto were improperly overruled, and the court erred in denying respondent's motion for a mistrial in this regard; (3) the trial court erred by rejecting respondent's proposed jury instruction No. 3, which provided that the State has the burden of proving the allegations in the petition beyond a reasonable doubt and instead accepting the State's proposed jury instruction No. 5, which provided that the State has the burden of proving beyond a reasonable doubt that respondent was an SVP; (4) the trial court erred in denying respondent's motion for mistrial when the State twice violated its order *in limine* barring testimony that there had been a finding of probable cause to believe that respondent was an SVP; and (5) respondent was denied his statutory right to a dispositional hearing. For the reasons that follow, we affirm.

¶ 12        The Act defines a sexually violent person as an individual who "has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2010). To show that respondent is a sexually violent person, the State is required to prove beyond a reasonable doubt that respondent: (1) has been convicted of a sexually violent offense; (2) has a "mental disorder" as defined by the Act; and that (3) he "is a danger to others because the mental disorder causes a substantial probability that the subject will commit acts of sexual violence." *In re Detention of Hardin*, 238 Ill. 2d 33, 43 (2010) (citing 725 ILCS 207/5(f), 15(b) (West 2006)). The Act defines a "mental disorder" as a "congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5(b) (West 2010).

¶ 13          The Rejection of Respondent's Proposed *Voir Dire* Question Number 1

¶ 14        The trial court initially agreed to allow respondent to tell prospective jurors that they would hear evidence that he had been arrested and convicted for sexually violent offenses on three separate occasions, and then ask them if having heard that, they could be fair and impartial in deciding this case. Subsequently, the court *sua sponte* revisited the issue and

ruled that this question would not be allowed. Instead, the trial court ruled that it would allow the jurors to be asked with regard to the "index offense" only. By this ruling, respondent claims that the trial court deprived him of his constitutional right to a fair and impartial jury under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV), as well as the Illinois Constitution (Ill. Const. 1970, art. I, § 8).

¶ 15        The purpose of *voir dire* is to assure the selection of an impartial panel of jurors who are free from bias or prejudice. *People v. Terrell*, 185 Ill. 2d 467, 484 (1998). Our supreme court observed in *Terrell* that "the primary responsibility of conducting the *voir dire* examination lies with the trial court and the manner and scope of such examination rests within that court's discretion." *Id.* Indeed, the trial court possesses great latitude in deciding what questions to ask during *voir dire*. *Id.* As it is the duty of the trial court to manage the *voir dire*, the decision to permit supplemental questions by counsel during *voir dire* is within the discretion of the trial court. *People v. Johnson*, 408 Ill. App. 3d 157, 164 (2010). On review, an abuse of the court's discretion will be found only when the record reveals that the court's conduct " 'thwarted the selection of an impartial jury.' " *Terrell*, 185 Ill. 2d at 484 (quoting *People v. Williams*, 164 Ill. 2d 1, 16 (1994)). Further, to be constitutionally compelled, it is not enough that a *voir dire* question be helpful; rather, the trial court's failure to ask the question must render the defendant proceedings fundamentally unfair. *Id.* at 485.

¶ 16        Further, Illinois Supreme Court Rule 234 provides:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching upon their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature and extent of the damages. *Questions shall not directly or indirectly concern matters of law or instructions*. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors." (Emphasis added.) Ill. S. Ct. R. 234 (eff. May 1, 1997).

¶ 17        In making its ultimate decision in this case, the trial court relied on *People v. Buss*, 187 Ill. 2d 144 (1999), *abrogated on other grounds by In re G.O.*, 191 Ill. 2d 37, 46-50 (2000), as well as *People v. Jackson*, 182 Ill. 2d 30 (1998), and found that respondent's proposed question was too factually specific. In *Buss*, 187 Ill. 2d at 178, a capital case, our supreme court focused on four proposed questions dealing with mitigation evidence. Specifically, one of the questions asked, in subparts, "a. Would you be able to consider and give full weight to psychiatric/psychological testimony? b. Would you consider mercy as a possible mitigating factor, based upon the evidence?" (Internal quotation marks omitted.) *Id.* In upholding the trial court's refusal to allow these questions, the supreme court noted that *voir dire* is not to be used to indoctrinate jurors or to impanel a jury with a " 'particular predisposition.' " *Buss*, 187 Ill. 2d at 178 (quoting *People v. Bowel*, 111 Ill. 2d 58, 64 (1986)). As to questions regarding psychological evidence or mercy, the court stated that while it is appropriate to ask prospective jurors whether they will follow the law, the purpose of *voir dire* is not to ascertain prospective jurors' opinions with respect to evidence to be

presented at trial. *Id.* at 179-80 (citing *People v. Howard*, 147 Ill. 2d 103, 135-36 (1991) (upholding the trial court's refusal to ask prospective jurors their attitudes toward guns)).

¶ 18        In *Jackson*, 182 Ill. 2d at 62, another capital case, our supreme court upheld the trial court's refusal to ask prospective jurors whether they would always vote for the death penalty if certain statutory aggravating factors were present. Specifically, the defendant therein requested that prospective jurors be asked if they would automatically vote to impose the death penalty in all murder cases where more than one person was killed and if they would automatically vote to impose the death penalty in all murder cases where a child is killed. *Id.* at 61. Relying on its previous decisions, the supreme court noted that conducting inquiry into whether a potential juror would vote to impose the death penalty, given a particular set of circumstances, is not required by *Morgan v. Illinois*, 504 U.S. 719 (1992). *Jackson*, 182 Ill. 2d at 60 (citing *People v. Hope*, 168 Ill. 2d 1 (1995), and *People v. Brown*, 172 Ill. 2d 1 (1996)); see also *Morgan*, 504 U.S. at 729 (holding that a juror who would vote to impose the death penalty in every case is subject to dismissal for cause).

¶ 19        Respondent attempts to distinguish *Buss* and *Jackson* by arguing that asking whether a jury member is biased against a person convicted of multiple sexually violent crimes does not introduce specific evidence, does not introduce mitigation evidence and does not introduce a theory of defense. Respondent, while admitting that a court can deny proposed questions that are "too fact specific," further argues that it can err by asking the venire a "broad inquiry" that fails "to call attention to specific matters which might lead the jurors to display disqualifying attitudes and preoccupations about the law." In support of this argument, respondent relies upon *People v. Gregg*, 315 Ill. App. 3d 59 (2000), *People v. Strain*, 194 Ill. 2d 467 (2000), and *People v. Murawski*, 2 Ill. 2d 143 (1954).

¶ 20        In *Gregg*, 315 Ill. App. 3d at 73, we found reversible error in the trial court's refusal to allow prospective jurors to be informed of and questioned with regard to the defendant's burden of proof and standard of proof imposed by law when the insanity defense is raised. In *Strain*, 194 Ill. 2d at 481, our supreme court affirmed this court's reversal of the defendant's conviction upon a finding that the trial court erroneously refused to propose certain questions to prospective jurors concerning the area of bias or prejudice toward street gangs. Lastly, in *Murawski*, 2 Ill. 2d at 147, an older case involving murder by abortion and illegal abortion, our supreme court found error, but not reversible error, where the trial court refused to allow prospective jurors to be questioned with regard to their views on abortion.

¶ 21        We cannot agree with respondent's attempt to distinguish *Buss* and *Jackson*. First, we disagree that the proposed question at issue here is not an effort to put forth specific evidence before the venire to gauge their reaction. To the contrary, the proposed question asks prospective jurors their reaction to specific evidence that the parties knew would be introduced at trial, that respondent has been convicted of sexually violent offenses on three separate occasions. We note that in his attempt to avoid the application of *Buss* here, respondent quotes the trial court in saying that, "*Buss*, of course, is not directly on point." This quote is taken entirely out of context and must be considered along with the trial court's comments in their entirety to understand its analysis. What the court actually said was as follows:

"This is a SVP case. This law is still a fairly new law. Case law is being made practically every month on these things, and I don't believe there is a case directly on point regarding this issue.

Buss, of course, is not directly on point, but I feel the analysis and the legal rationale is the same. The venire should not be asked about specific facts or evidence during *voir dire*. And that is what it says it *Buss*.

Specifically *Buss* addresses some questions–I understand it was a death penalty case. Nevertheless, this court feels the rationale is the case in that the questions that were proposed were too specific regarding would you impose the death penalty in any case in which there was a child or a kidnapping in the death of the child. And the court ultimately, that being the Supreme Court of Illinois, ultimately said that those questions were not appropriate."

We agree with the trial court's analysis.

¶ 22    We do not find the holdings of *Gregg*, *Strain*, and *Murawski* to require a different result. In *Gregg*, 315 Ill. App. 3d at 72-73, we found that as the insanity defense remained a subject of intense controversy and was known to be the subject of bias and prejudice, it was important for prospective jurors to be informed of and questioned with regard to the defendant's burden and standard of proof when the insanity defense is raised. Our decision was cast as an effort to effectuate the principles established in *People v. Zehr*, 103 Ill. 2d 472 (1984), and recognized that a general or broad statement of law that the burden of proof in a criminal case is beyond a reasonable doubt did not adequately inform jurors of the law when the insanity defense is raised. *Gregg*, 315 Ill. App. 3d at 72. Our holding was specifically limited, however, to require that prospective jurors be informed of the defendant's burden of proof and the standard of proof imposed by law when the insanity defense is raised and we limited this requirement to insanity cases where defense counsel requests that prospective jurors be so informed. *Id.* at 73. In *Strain*, 194 Ill. 2d at 477, our supreme court acknowledged that it had previously recognized that street gangs are regarded with considerable disfavor by other segments of our society and that, particularly in metropolitan areas, there may be strong prejudice against street gangs. As a result, the supreme court found that, in a case where gang-related testimony was pervasive, the defendant must be afforded an opportunity to question prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias. *Id.* at 480. Lastly, in *Murawski*, 2 Ill. 2d at 147, the court held that due to the controversial subject of abortion, prospective jurors should have been questioned about any bias or prejudice in that regard.

¶ 23    These cases do not hold that when the subject matter is controversial, jurors must be questioned with regard to all of the details of the subject that are expected to be admitted into evidence. Rather, in each case, the reviewing court found that jurors should be questioned with regard to any bias or prejudice concerning the controversial subject matter itself. It would be an unwarranted extension of *Gregg* to argue that when the insanity defense is raised, jurors should be specifically asked about their feelings concerning paraphilia or personality disorders with antisocial features. *Strain* did not hold that jurors must be questioned with regard to particular gangs in particular areas, or particular gang rankings.

*Murawski* only holds that prospective jurors need to be questioned on the general subject of abortion.

¶ 24    Here, the trial court refused to allow *voir dire* to inform prospective jurors that the respondent had previously been convicted of three separate sexually violent offenses. The trial court opted instead to allow a more general inquiry concerning the fact that he had previously been convicted of a sexually violent offense. We find that the trial court here struck the appropriate balance between informing the jurors of a particularly troubling aspect of the expected evidence, sexually violent offenses, and ascertaining any existing bias or prejudice in regard thereto versus the risk of being too specific and thus giving respondent the opportunity to inappropriately prequalify the jurors with regard to specific evidence. We find that this more general inquiry was sufficient to ascertain any existing bias or prejudice for sexually violent offenders that would preclude a juror from being fair and impartial. In fact, this inquiry was quite successful in that regard, causing the dismissal of over 40% of the venire. Respondent's allegation that the venire contained persons who did not respond to this question concerning sexually violent offenses generally, but would have responded to a question concerning three such offenses, is wholly conclusory and unsupported by the record or any precedent. The record does not reveal the court's exercise of discretion here thwarted the selection of an impartial jury. The court's ruling rejecting respondent's proposed *voir dire* question No. 1 was not an abuse of discretion.

¶ 25    We find further support for the trial court's ruling in Supreme Court Rule 234. As noted above, Rule 234 provides in part that: "Questions shall not directly or indirectly concern matters of law or instructions." Ill. S. Ct. R. 234 (eff. May 1, 1997). At respondent's request the jury was given a modified version of IPI Civil (2006) No. 2.04 and was instructed as follows:

> "I have allowed the witnesses to testify in part to police reports, Department of Corrections records, Department of Human Services records, psychological evaluations, psychological articles and statements other than those made by the Respondent to the witnesses that have not been admitted into evidence. This testimony was allowed for a limited purpose. It was allowed so that the witnesses may tell you what he or she relied on to form his or her opinion. The material being referred to is not evidence in this case and may not be considered by you as evidence. You may consider the material for the purpose of deciding what weight, if any, you will give the opinions testified to by these witnesses."

The jury therefore was instructed that as a matter of law they were to consider evidence of sexually violent offenses for a limited purpose.

¶ 26    In *People v. Brandon*, 157 Ill. App. 3d 835, 842 (1987), this court upheld the trial court's refusal to ask prospective jurors if they would be prejudiced against the defendant because of prior felony convictions. In making this decision, we relied in part on Rule 234. As the proposed question was clearly to be covered by limiting instruction Illinois Pattern Jury Instructions, Criminal, No. 3.13 (2d ed. 1981), we found that it was improper. In so finding, we relied on *People v. Lexow*, 23 Ill. 2d 541, 543 (1962), where our supreme court found no abuse of discretion in the trial court's refusal to allow inquiry of a prospective juror

concerning defendant's prior conviction. In that case, at the close of all the evidence, the trial court instructed the jury with regard to the limited use of such evidence. *Lexow*, 23 Ill. 2d at 544. It was also noted that the trial judge ruled the question was improper on the basis that a prospective juror could not be expected to answer such a question before being instructed as to the limited use of proof of a prior conviction. *Id.* The record here reflects that the trial court had similar concerns when it stated:

> "One other aspect of this too is, just as an aside, but I still think it's relevant, if you ask the juror, prospective juror, can you be fair knowing that Mr. Butler has been convicted of three sexually violent offenses, jurors won't know the law unless they're a criminal defense attorney or prosecutor, but typically our jurors, prospective jurors, do not understand the law.

> A juror may believe that they have to answer that question 'I can't be fair' because they're thinking if he's done it three times, that leads to propensity. Well, propensity under the law is something that they're allowed to consider and it is allowed.

> So I think we're going too far afield and that we're getting into questions of law as to what's fair and impartial or what's proper to be considered. That's another aspect of this."

¶ 27   Respondent was permitted to question prospective jurors with regard to bias or prejudice against violent sex offenders generally. Additionally, the trial court secured their vow to follow the law as it was to be given to them and then gave a limiting instruction on the use of evidence of the prior offenses. As a result, there was no abuse of discretion in rejecting the more specific inquiry requested by the respondent.

¶ 28              Closing Argument–Substantive Use of Basis of Opinion Testimony

¶ 29   Respondent contends that the State violated the trial court's order *in limine* when it improperly argued basis of opinion testimony as substantive evidence and that the trial court erred by overruling his objections and denying his motion for a mistrial in that regard.

¶ 30   The prosecution is afforded wide latitude in making closing arguments so long as the comments made are based on the evidence or reasonable inferences drawn therefrom. *People v. Williams*, 192 Ill. 2d 548, 573 (2000). The prosecution may comment upon the credibility of the witnesses and the defense characterizations of the evidence or case and it may respond in rebuttal to statements made by the defense counsel that clearly invite a response. *People v. Gonzalez*, 388 Ill. App. 3d 566, 590 (2008). When we review a challenge to remarks made by the prosecution during closing arguments, the comments must be considered in context of the entire closing arguments made by both parties. *People v. Wiley*, 165 Ill. 2d 259, 295 (1995). A reviewing court will not reverse a jury's verdict based upon improper remarks made during closing arguments unless the comments were of such magnitude that they resulted in substantial prejudice to defendant and constituted a material factor in his conviction. *People v. Griffin*, 368 Ill. App. 3d 369, 376 (2006).

¶ 31   In *Wilson v. Clark*, 84 Ill. 2d 186, 194-96 (1981), our supreme court adopted Federal Rules of Evidence 703 and 705 and held that expert witnesses may base their opinion

testimony on facts not ordinarily admissible in evidence.[1] Subsequently, our supreme court expanded the rule of *Wilson v. Clark* and held that an expert witness may be allowed to reveal the contents of materials upon which the expert reasonably relies in order to explain the basis of his or her opinion. See *People v. Anderson*, 113 Ill. 2d 1, 9 (1986). This precedent did not create a new hearsay exception as the underlying facts or data upon which an expert in a particular field is found to have reasonably relied are not admitted for the truth of the matters asserted therein. The underlying facts or data are admitted " 'for the limited purpose of explaining the basis for the expert witness' opinion.' " *City of Chicago v. Anthony*, 136 Ill. 2d 169, 185 (1990) (quoting *Anderson*, 113 Ill. 2d at 12). For this reason, facts admitted as the basis of an expert's opinion must not be presented to the jury as substantive evidence of the underlying assertions. *People v. Murphy*, 157 Ill. App. 3d 115, 119 (1987). Here, the trial court was well aware of these principles. When ruling on respondent's motion *in limine*, the court further ruled that when discussing the details of respondent's prior background in closing argument, "you really must preface any details with the fact that the doctor relied upon the details to form their opinion."

¶ 32      Respondent specifically complains of the following statements made in the State's closing arguments. During the State's opening closing argument, the prosecutor stated:

"In that case, thank God there was a student around to intercede. He got convicted on both those cases and he was on parole for his 1975 case when he was convicted and committed these offenses. Then when he is on parole for a robbery that had occurred, he commits another sexual offense.

That's the one where he grabbed the woman off the street and took her to an alleyway[,] *** told the woman to take your pants off *** [and] bashed her head trying to get her to submit. Bashed it with a brick. She's injured and he receives 22 years in the Illinois Department of Corrections for that."

In the State's rebuttal argument, the prosecutor stated:

"Look at this Respondent['s] *** history and what he has done over and over and over again on bond, on parole, after doing 22 years in prison, going out and doing it again."

¶ 33      The State argues that these quotes are taken out of context and that when viewed in their entirety it is clear that the prosecutor in each instance was referring to the basis of its experts'

---

[1]Our recently adopted Illinois Rules of Evidence 703 and 705 track verbatim the corresponding federal rules. Illinois Rule of Evidence 703 (Ill. R. Evid. 703 (eff. Jan. 1, 2011)) provides: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Illinois Rule of Evidence 705 (Ill. R. Evid. 705 (eff. Jan. 1, 2011)) provides: "The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

opinions. It further points out that both of its experts testified to the facts and circumstances of respondent's background upon which they relied in forming their opinions. As a result, we set forth the complained-of remarks in their full relevant context. In closing, the prosecutor stated:

"[PROSECUTOR]: You have heard a lot and learned a lot today. You have learned, as I told you this morning, what the Sexually Violent Persons Act is in Illinois. It's those three things. It says a person has to have a mental disorder, that they have to have a conviction for a sexually violent offense and their mental disorder has to be that it makes it substantially probable for them to reoffend.

But most importantly in this case today, you found out that this Respondent, Johnny Butler, is a sexually violent person because he meets every single one of those criteria. *You heard today what the doctors relied upon* and I think when Dr. Ransom just testified and she told you, she showed you clear sexually deviant arousal pattern. *That's what those doctors were relying on* and that's what they saw when they looked at this Respondent's history and you remember it. It was as clear as day just a few moments ago.

He started in 1975. He started with an attempt rape. He had some kind of fixation with the University of Illinois Chicago campus and first rape started there. He asked for change and he forced her into an area. He said I will f*** you, you white b***. She screams. She fights him. You heard from Dr. Ransom she tried to fight him several times to get away and he was finally able to flee from her when her screams were heard. He was convicted of that. He got 5 to 15 years. He was convicted by a jury.

He goes back to the University of Illinois campus. You heard about the facts. This time he actually raped a woman. He took a woman on the University of Illinois campus and took her to submit to vaginal and oral sex over and over and over. You heard how he humiliated her and made her face on her hands and knees in a corner and stole from her purse and then he said one more for the road and raped her again. It's that deviant pattern, *that deviant pattern those doctors relied upon* and that they saw.

You heard how in 1980 when that rape happened, just a few days before on the same campus, he had committed an unlawful restraint and when that case came into court, it was eerily similar. He grabbed a woman. He drug her to the side. In that case, thank God there was a student around that was able to intercede. He got convicted on both those cases and he was on his parole for his 1975 case when he was convicted and committed these offenses. Then when he is on parole for a robbery that had occurred, he commits another sexual offense.

[RESPONDENT'S COUNSEL]: We will object.

THE COURT: Overruled.

[PROSECUTOR]: He is on parole for a robbery that occurred in 1995. You heard the testimony of it from the stand today. While he is on parole for that robbery, he commits another sexually violent offense. It's that pattern. *It's what the doctors are seeing that pattern that leads them to their diagnosis* and that's the one that happened in 1997. That's the one where he grabbed the woman off the street and took her to an alleyway acting like he had a weapon holding something to her back. That's the one that he told

the woman take your pants off and she did until she figured out that he didn't have a weapon and then she started fighting. And you heard how he bashed her head in trying to get her to submit.

[RESPONDENT'S COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: Bashed it with a brick. That was the testimony from that stand a few minutes ago. It's that sexually deviant pattern of behavior that you see over and over and over. She's injured and he receives 22 years in the Illinois Department of Corrections for that." (Emphases added.)

In rebuttal, the prosecutor argued:

"[PROSECUTOR]: Thank you, your Honor. Ladies and gentlemen, during opening statements, counsel for the Respondent got up here and said one important statement. He said a person's opinions are only as good as the bases for those opinions. A person's opinions are only as good as what they are based on.

Ladies and gentlemen, you head from Dr. Suire and Dr. Ransom up on that stand the mountain of information regarding that man's behavior, background, history of contact with the law, problems with substance abuse, treatment, lack of treatment, lack of effect that the treatment had on his subsequent behavior and the rash of victims that he left behind and *that's what they based their opinions on*.

Now counsel during closing arguments just got up here and said, well, you're going to get an instruction from the Court that those things aren't necessarily evidence. *But that is what the experts relied upon and the opinion of the experts is evidence*. The diagnosis of the experts is evidence. The risk assessment of the experts is evidence. And when they look at what that man did to those poor young women in 1975, in 1980–

[RESPONDENT'S COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: –in 1997 and they see, *as Dr. Ransom and Dr. Suire testified to, a pattern of sexual deviance*, that Dr. Suire used terms such as deviance, that Dr. Suire used terms such as deviant sexual arousal where he seeks out people who do not want to have sex with him repeatedly over years in the face of repeated sanctions and that is what these people who are licensed and have a great degree of education and have Master's degrees and Doctorate degrees and lots of experience and then look at that in context and say, well, I'm going to look at the Diagnostic and Statistical Manual of Mental Disorders. Based on that, the authoritative manual in the field, it is clear he suffers from this paraphilia; that he has recurrent intense sexually arousing fantasies, sexual urges or behaviors generally involving non consenting person over a period of at least six months and that this causes clinically significant distress or impairment in social, occupational or other areas of function.

Just now during closing arguments, counsel got up here and said you can't really consider paraphilia because everyone needs to be clear on the criteria and the criteria aren't so clearly laid out. But that's not what the expert stated on the stand. That's not

what the evidence told you. What's coming out of my mouth now and what came out of counsel's mouth, that's not the evidence. The evidence is what came from the witnesses on the stand.

What counsel explained and what [the prosecutor] asked, was paraphilia not otherwise specified sexually attracted to non consenting women. Both experts articulated quite clearly and it explains how this man is offending and this man's background and this man's pattern of behavior of criminal sexual deviant behavior and disorders, it's clear.

We have the burden. We embrace the burden because the evidence is clear. Antisocial personality disorder, or in the case of Dr. Ransom because she didn't have that background going back to the defendant's youth before the age of 15 that that evidence of conduct disorder, that particular element, she diagnoses him with the other personality disorder, not otherwise specified with antisocial features. Other than that, they are the same mental disorder. They are the same thing.

When you look at this Respondent, when you look at, as they explain, this maladaptive pattern, this inability to abide by social norms, what's expected of people in society, this lack of concern for the safety of others, this lack of remorse and you look at this person's history and what he has done over and over and over again on bond, on parole, after doing 22 years in prison, going out and doing it again–

[RESPONDENT'S COUNSEL]: Objection.

THE COURT: Overruled.

[PROSECUTOR]: –*it's clear that the doctors are well justified*, that it is painfully clear that this Respondent suffers from that personality disorder. The substance abuse, same thing based upon what the records show the doctors. As Dr. Suire and Dr. Ransom explain that those additional mental disorders, the personality disorder, the substance abuse disorder, that those act to essentially inhibit the Respondent's ability to control those deviant sexual urges from the paraphilia and that's what makes him even more dangerous. That's how those mental disorders interact with each other.

So going with respect to that second element, those experts are well justified in arriving at the conclusion they made. There is really no question at all that the Respondent does suffer from the mental disorders." (Emphases added.)

¶ 34    When the arguments are viewed in their entirety, it is clear that the State argued the facts and circumstances of respondent's history of violent sexual offenses as having been relied upon and completely supporting the opinions of their expert witnesses. Additionally, both prosecutors assiduously adhered to the trial court's ruling *in limine* by repeatedly prefacing and qualifying their remarks as relating solely to their expert witnesses' opinions. As such, we find that the arguments were not improperly made.

¶ 35    In its arguments before this court the State does not rely upon *In re Commitment of Kelley*, 2012 IL App (1st) 110240, other than in its brief discussion on the appropriate standard of review. Respondent apparently cites *Kelley* for the sole purpose of distinguishing it. In *Kelley*, 2012 IL App (1st) 110240, ¶ 43, respondent complained that the State had inappropriately argued *Wilson v. Clark* evidence substantively in rebuttal argument. In

finding no error, this court pointed out that the State's rebuttal arguments were invited by respondent's counsel's closing argument. *Id.* ¶ 44. Specifically, the State in its opening closing argument argued that respondent's history of sexual misconduct supported their experts' opinions and helped prove beyond a reasonable doubt that respondent suffered from a mental disorder. *Id.* In response, respondent's counsel argued in closing that the jury should not give weight to one of the expert doctor's testimony because he incorrectly relied upon a 39-year history of sexually reoffending, pointing out that this history was really just a 4-year period 39 years ago. *Id.* In rebuttal, the State pointed out that respondent had not offended for 33 years because he was incarcerated and that as soon as he had been released from prison he reoffended. *Id.* ¶ 45. This court ruled that the details argued by the State in rebuttal argument were invited. *Id.*

¶ 36    In the case at bar, respondent argues that as he did not attack the accuracy of the underlying facts relied upon by the State's experts, he did not invite rebuttal argument with regard to those facts and thus the argument was error. Along the same lines, he argues that as a portion of the complained-of remarks occurred in opening closing argument they could not have been invited. We find this argument to be without merit. Nothing in *Kelley* should be construed to hold that argument concerning the sexually violent history of a respondent must be invited in order to be appropriate. To the contrary, as noted above, precedent has long held that the underlying facts reasonably relied upon by an expert witness are admissible and subject to comment for the purpose of explaining the basis for the expert witness's opinions even if not independently admissible. Respondent's argument here ignores the fact that regardless of points and arguments raised by the defense, the burden of proof remains upon the State to show that the respondent is an SVP beyond a reasonable doubt. In its quest to sustain its burden, the State may rely on expert witness opinion and in doing so may also explain the basis for those opinions. See *Wilson v. Clark*, 84 Ill. 2d at 194-96; *Anderson*, 113 Ill. 2d at 9; *Anthony*, 136 Ill. 2d at 185.

¶ 37    We also find respondent's reliance upon *People v. Murphy*, 157 Ill. App. 3d 115 (1987), to be unavailing. *Murphy* was a criminal case involving the charge of murder and the defense of insanity or in the alternative self-defense. In *Murphy*, 157 Ill. App. 3d at 116-20, a divided panel of this court found that the State had inappropriately inquired of a defense expert witness with regard to the contents of a Cook County Psychiatric Institute social history report and then also argued before the jury with regard to its contents. Specifically, the portions of the report that were highlighted were statements of the defendant's mother that tended to negate both the defenses of insanity and self-defense. *Id.* at 118. Importantly, in finding reversible error the court noted that under *Wilson v. Clark* and *Anderson*, in order to be admissible facts relied upon by expert witnesses must be of a type reasonably relied upon by experts in the field. *Id.* at 119. A majority of the *Murphy* court found that the declarations of the defendant's mother were not sufficiently reliable to be admissible under *Wilson v. Clark*.[2] *Id.* Such is not the case in the matter before this court as the respondent herein has

---

[2]The *Murphy* majority referred to this as "the hearsay exception of *Wilson*." *Murphy*, 115 Ill. App. 3d at 119. We respectfully disagree that the admissibility of underlying facts relied upon by an expert witness to explain the expert's opinion is an exception to the hearsay rule. As noted

not claimed that the circumstances surrounding respondent's prior sexually violent history were not reasonably relied upon by the State's experts. *Murphy* is thus distinguishable.

¶ 38 Additionally, the trial court gave the jury a modified version of IPI Civil (2006) No. 2.04 limiting instruction as is set forth above. This instruction was given to the jury orally during the testimony of both Dr. Suire and Dr. Ransom as well as orally and in writing at the close of the case prior to deliberations. Additionally, the jury was instructed that closing arguments are not to be considered as evidence. As in *Kelley*, we find that there is nothing in the record to rebut the presumption that the jurors followed these instructions and we therefore find that the court's instructions were sufficient to alleviate any risk that the jury considered the State's closing arguments as substantive evidence. See *Kelley*, 2012 IL App (1st) 110240, ¶ 46; *In re Detention of Lieberman*, 379 Ill. App. 3d 585, 604-05 (2007) (finding that where the trial court instructed the jury that the details of the respondent's past crimes were being admitted to aid the jury in understanding the basis of an expert's opinion and not as substantive evidence, there was nothing in the record to rebut the presumption that the jury followed that instruction). Lastly, and again as we found in *Kelley*, 2012 IL App (1st) 110240, ¶ 47, based upon the evidence presented in the entire record, even if error we cannot say that these comments were of such magnitude that they resulted in substantial prejudice to defendant and constituted a material factor in his conviction.

¶ 39 Lastly, in regard to this issue, respondent argues that the trial court erred by denying his motion for a mistrial concerning the alleged substantive use of basis of opinion testimony during closing argument. The decision to declare a mistrial lies within the discretion of the court, and a mistrial should be declared only if there is some occurrence at trial of such a character and magnitude that the party seeking a mistrial is deprived of a fair trial. *Kelley*, 2012 IL App (1st) 110240, ¶ 49. The underlying foundation for this argument is the previous argument that the state impermissibly argued basis of opinion testimony as substantive evidence. We have determined that the State did not argue the details of respondent's sexually violent offenses as substantive evidence but, rather, referred to that evidence as the basis of its expert witnesses' opinions. We have also noted that the trial court consistently instructed the jury as to the appropriate use of the evidence in question. As a result we also find that the denial of respondent's motion for a mistrial was not an abuse of discretion.

¶ 40                    Jury Instructions–Burden of Proof

¶ 41 At the jury instruction conference, the State proposed its jury instruction No. 5, which was derived from IPI Criminal (2000) No. 2.03, as modified, as follows:

> "The Respondent is presumed not to be a sexually violent person. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is a sexually violent person.

---

above, this type of evidence is not hearsay at all as it is not offered for the truth of the matters asserted therein, but rather to explain the basis of an expert's opinion. See *Anthony*, 136 Ill. 2d at 185; *Anderson*, 113 Ill. 2d at 9.

The State has the burden of proving the Respondent is a sexually violent person beyond a reasonable doubt and this burden remains on the State throughout the case. The Respondent is not required to prove that he is not a sexually violent person."

¶ 42 Respondent objected to the above instruction and proposed in its place its proposed jury instruction No. 3, which substituted the second paragraph as follows:

"The State has the burden of proving the allegations of the petition beyond a reasonable doubt and this burden remains on the State throughout the case. The Respondent is not required to disprove the allegation(s)."

¶ 43 The trial court overruled respondent's objection and gave the State's proposed instruction. In so ruling, the court stated, "Okay. I overruled your objection. Part of my ruling is that the jury does not ever get to see the petition. I find the language to be confusing and it would be inconsistent and confusing. Overruled."

¶ 44 Respondent claims that the trial court's ruling was error as the Act explicitly states, "[a]t a trial on a petition under this Act, the petitioner has the burden of proving the allegations in the petition beyond a reasonable doubt." 725 ILCS 207/35(d)(1) (West 2010). The State responds that the trial court's instructions to the jury accurately stated the law and did not mislead the jury.

¶ 45 A trial court's choice of jury instruction is reviewed for abuse of discretion. *People v. Starnes*, 374 Ill. App. 3d 132, 139 (2007). An abuse of discretion occurs only where the court's ruling is "arbitrary, fanciful or unreasonable, or where no reasonable person could take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Rodriguez*, 387 Ill. App. 3d 812, 821 (2008). "Further, a reviewing court will not ordinarily reverse a circuit court, even if the circuit court gave faulty instructions, unless the instructions clearly misled the jury and resulted in prejudice to the defendant." *People v. Polk*, 407 Ill. App. 3d 80, 108 (2010). "[T]he issue of whether the jury instructions accurately conveyed to the jury the applicable law is reviewed *de novo*." *People v. Parker*, 223 Ill. 2d 494, 501 (2006).

¶ 46 As relevant here, the Act requires:

"(b) A petition filed under this Section shall allege that all of the following apply to the person alleged to be a sexually violent person:

(1) The person satisfies any of the following criteria:

(A) The person has been convicted of a sexually violent offense;

* * *

(4) The person has a mental disorder.

(5) The person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." 725 ILCS 207/15(b) (West 2010).

¶ 47 In addition to the jury instruction set forth above, the court also instructed the jury as follows: "The term sexually violent person means a person who has been convicted of a sexually violent offense and who is dangerous because he suffers from a mental disorder that makes it substantially probable that person will engage in acts of sexual violence."

¶ 48	In support of its allegation of error here, respondent relies solely upon the Supreme Court of Wisconsin's decision in *In re the Commitment of Thiel*, 2000 WI 67, 235 Wis. 2d 823, 612 N.W.2d 94. In *Thiel*, 2000 WI 67, ¶ 36, 235 Wis. 2d 823, 612 N.W.2d 94, the Wisconsin Supreme Court found that the State had failed to prove that the respondent was within 90 days of release or discharge from a sentence imposed for a conviction for a sexually violent offense, from a secured correctional facility. We agree with the State here that for at least two reasons, *Thiel* is inapposite.

¶ 49	First, the decision in *Thiel* was based on a statutory provision of Wisconsin's SVP act (Wisconsin's Act) that does not exist in Illinois. At the relevant time, Wisconsin's Act provided that a petition filed under that act allege that the person the State seeks to commit be within 90 days of discharge or release. See *Thiel*, 2000 WI 67, ¶ 12, 235 Wis. 2d 823, 612 N.W.2d 94 (citing Wis. Stat. § 980.02(2)). The Wisconsin Supreme Court held that this required allegation must be proven beyond a reasonable doubt and that the State's failure to do so was fatal to their case. *Id.* ¶ 38. Illinois' SVP Act does not require that the petition allege release within 90 days. Notably, this provision which was the very basis of *Thiel* was repealed in 2006. See 2005 Wis. Legis. Serv. 21 (West).

¶ 50	Second, a close reading of *Thiel* reveals that its holding actually supports the State's position here. *Thiel* did not hold that every allegation in a petition under Wisconsin's Act must be proven beyond a reasonable doubt, rather only those required by statute. See *Thiel*, 2000 WI 67, ¶ 19, 235 Wis. 2d 823, 612 N.W.2d 94. In so holding, the court noted that section 980.02(2) of Wisconsin's Act required the petition to contain four distinct allegations, the same three required in Illinois plus the 90-day release date allegation, and that they be proved beyond a reasonable doubt. *Id.* The court, however, went on to say that Wisconsin law allowed the petitioner to supplement the petition with facts to support the specific allegations listed under section 980.02(2) and that these supplemental facts are not categorized as "allegations." *Id.* ¶ 20 (citing Wis. Stat. § 980.02(2)). Rather, these particular facts serve merely to buttress the allegations that must be set forth under section 980.02(2) and to establish probable cause to believe that the person named in the petition is a sexually violent person. *Id.* ¶ 21. The Wisconsin Supreme Court went on to quote legislative history which informed that " '[t]he [S]tate must prove each of the 4 allegations in the petition beyond a reasonable doubt.' LRB Drafting File for 1993 Wis. Act 479, Analysis of Assembly Bill 3, at 3." *Id.* ¶ 22. The reasoning of *Thiel* applies equally here. Our statute requires three specific allegations and the jury was instructed that the State bore the burden of proof beyond a reasonable doubt with regard to those specific allegations. See 725 ILCS 207/15(b)(1) (West 2010).

¶ 51	Respondent herein cites no Illinois law to support its position and *Thiel* is distinguishable and in fact supports the State's position. We find that the trial court accurately informed the jury of the applicable law and thus committed no error when it accepted the State's proposed jury instruction, rejected the respondent's and overruled his objections in that regard.


¶ 52	Violation of *In Limine* Order Regarding the Finding of Probable Cause

¶ 53	As noted earlier, the trial court ordered *in limine* that the State was precluded from

eliciting testimony from its witnesses that there had been a finding of probable cause to believe that the respondent was a sexually violent person. During the testimony of Dr. Suire, the State inquired as to why he put respondent in a high risk group as a result of a series of tests known as Static 99. The following is Dr. Suire's response and the proceedings that occurred thereafter:

"A. Well, essentially, there had already been a previous assessment looking at his risk that included it was very high. There had been an adversarial legal proceeding in which probable cause was found he might meet criteria in [SVP].

[RESPONDENT'S COUNSEL]: Your Honor, I have an objection right now.

THE COURT: Jurors are to disregard that statement about the probable cause finding. Disregard that. Go ahead."

Dr. Ransom's testimony commenced as follows:

"Q. Dr. Ransom, how did you become involved in this case?

A. While [*sic*], like I said before, there is a screening process that came to our attention where he was reached a level of threshold. Mr. Butler reached this threshold and I was the next psychologist on the list.

Let me stop for a second. That's how it typically happens. In this case it's a little bit different in that there was a previous evaluator that assessed Mr. Butler and he has since retired. So probable cause had already been found on Mr. Butler.

Q. Moving on.

THE COURT: Jurors, disregard any comments about probable cause. That should be disregarded."

¶ 54    In *People v. Hall*, 194 Ill. 2d 305, 341-42 (2000), our supreme court explained the rare circumstances under which a mistrial should be declared based upon a violation of a motion *in limine*:

"A trial court has broad discretion to determine the propriety of declaring a mistrial. [Citations.] A mistrial should generally be declared only as the result of some occurrence at trial of such character and magnitude that the party seeking it is deprived of his right to a fair trial. [Citation.] Accordingly, the violation of a motion *in limine* will constitute a ground for mistrial only where the violation deprived the defendant of a fair trial. [Citation.]" (Internal quotation marks omitted.)

Further, because it is within the trial court's sound discretion to grant or deny a party's request for a mistrial, we will uphold the trial court's decision to deny respondent's motion for a mistrial absent an abuse of discretion. *People v. Phillips*, 383 Ill. App. 3d 521, 547 (2008). An abuse of discretion exists only when the trial court's ruling is "arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 55    Generally, if a timely objection is made at trial to improper interrogation, the court can cure the error by sustaining the objection or instructing the jury to disregard the question and answer. *Hall*, 194 Ill. 2d at 342 (citing *People v. Carlson*, 79 Ill. 2d 564, 577 (1980)). In *Hall*, 194 Ill. 2d at 342, our supreme court recognized that situations exist where improper

questions are so damaging that a trial court cannot cure the prejudicial effect, but found that not to be the case there.

¶ 56    Similarly, in this case, we find that the trial court's quick response to respondent's timely objections prevented any prejudicial effect of the violation of the *in limine* order and thus cured any error. First, we note that the violation here was not the result of any improper questions by the State but rather in each case the witness' volunteered testimony. We find nothing in the State's questions that would lead to the conclusion that the trial court's *in limine* order was intentionally violated. Second, in each case, respondent's timely objection was sustained and the jury was instructed to disregard the offending answer. Lastly, as the trial court noted, each witness's reference to a finding of probable cause was a brief passing reference the significance of which the jury did not likely understand. As a result, we find that the trial court's denial of the respondent's motion for mistrial in this regard was not an abuse of discretion.

¶ 57                                    Dispositional Hearing

¶ 58    Finally, we consider respondent's claim that the trial judge denied him a dispositional hearing as mandated by the Act (725 ILCS 207/40(b)(1) (West 2010)) before entering the commitment order. As a result of this error, respondent asks us to vacate the commitment order and remand this matter for proceedings in accordance with the Act. The provision regarding dispositional hearings under the Act provides in relevant part:

> "(a) If a court or jury determines that the person who is the subject of a petition under Section 15 of this Act is a sexually violent person, the court shall order the person to be committed to the custody of the Department for control, care and treatment until such time as the person is no longer a sexually violent person.

> (b)(1) The court shall enter an initial commitment order under this Section pursuant to a hearing held as soon as practicable after the judgment is entered that the person who is the subject of a petition under Section 15 is a sexually violent person. If the court lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial, it may adjourn the hearing and order the Department to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order. ***

> (2) An order for commitment under this Section shall specify either institutional care in a secure facility, as provided under Section 50 of this Act, or conditional release. In determining whether commitment shall be for institutional care in a secure facility or for conditional release, the court shall consider the nature and circumstances of the behavior that was the basis of the allegation in the petition under paragraph (b)(1) of Section 15, the person's mental history and present mental condition, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment." 725 ILCS 207/40(a), (b)(1), (2) (West 2010).

¶ 59    Immediately after entering judgment on the jury's verdict finding respondent was an SVP under the Act, the trial court heard first from the State. The State made reference to the

provisions of the Act cited above and then asked that the trial court make a determination that the respondent should be committed to a secure facility of the DHS for secure care, control, and treatment. The trial court then heard from counsel for the respondent. Counsel indicated no objection to the entry of an initial commitment order. However, referring to section 40(b)(2) of the Act (725 ILCS 207/40(b)(2) (West 2010)), counsel went on to note that there was no evidence adduced in the proceeding on the question of what arrangements were available to ensure that the respondent had access to and would participate in necessary treatment. Counsel went on to state as follows:

> "We will be asking to have a disposition hearing. We will be asking to have an evaluation of Mr. Butler so we may present that evidence to the Court so the Court may decide what recommendation to make to the Department of Human Services."

¶ 60       The trial court ruled that based on the Act respondent did not have a right to a dispositional hearing. In so ruling, the trial court relied upon two cases from the Second District of our appellate court in which the trial court's decision not to continue the dispositional hearing to obtain additional information was found not to be an abuse of discretion. See *In re Detention of Varner*, 315 Ill. App. 3d 626 (2000), *aff'd*, 198 Ill. 2d 78 (2001), *cert. granted & judgment vacated by Varner v. Illinois*, 537 U.S. 802 (2002) (vacating *Varner* on other grounds and remanding the case to our supreme court for further consideration in light of *Kansas v. Crane*, 534 U.S. 407 (2002)); *In re Detention of Tittlebach*, 324 Ill. App. 3d 6 (2001). The trial court further stated:

> "The evidence that I heard is Mr. Butler is in–has done some ancillary groups; that he has not even started stage one of a five-stage treatment program for sexual offender treatment. There is a clearly established pattern of deviant sexual behavior and I don't find lack of sufficient evidence to find that he will not be conditionally released at this time. He is going to the [DHS] in Rushville. That's my ruling over Respondent's objection."

Subsequently, at a hearing on respondent's motion for a new trial, while denying the motion the trial court reiterated its ruling that based on the current case law, the trial court need not hold a dispositional hearing so long as the court felt it had sufficient information to make a determination as to the appropriate setting for treatment.

¶ 61       Since the trial court's ruling in this case, this court has had the opportunity to rule on the timing and adequacy of dispositional hearings under the Act. In *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 69, *appeal allowed*, No. 115542 (May 29, 2013), the respondent objected to the immediate entry of an order for commitment in a secure setting as he had a witness to present in support of a request for conditional release and was also requesting a predisposition evaluation be conducted. The objection was overruled and the order was entered. On appeal, this court held that the Act's plain language requires the trial court to conduct a hearing before entering the commitment order. *Id.* ¶ 73. We also recognized that the Act grants the trial court discretion not to adjourn the proceedings where the court believes neither a supplemental examination nor a predisposition investigation is required in framing its commitment order. *Id.* However, we also ruled that the Act does not allow the trial court to deny a respondent his right to present testimony or other evidence addressing

the factors set forth in section 40(b)(2) of the Act or in mitigation of commitment to a secure facility during the dispositional phase. *Id.* Applying that interpretation of the Act, we further held that even if the trial court determined that a predisposition evaluation was unnecessary, the trial court erred and did not comply with the language of the Act when it failed to give the respondent an opportunity to call his witnesses. *Id.* ¶ 74; see also *People v. Winterhalter*, 313 Ill. App. 3d 972, 980 (2000) (where the Third District cautioned that the parties had blurred the distinction between the predisposition investigation or supplementary mental examination which the court *may* in its discretion order with the dispositional hearing which the court is *required* to hold).

¶ 62 In his motion to cite additional authority and in oral argument, respondent relies heavily on *Fields* and asserts that its holdings should lead us to vacate the commitment order and remand this matter for a new dispositional hearing. On the other hand, the State acknowledges that the current state of the law requires that a dispositional hearing be held. However, the State points out that in the case at bar no request was made to present any additional evidence or testimony. The only request made prior to the entry of the commitment order was for an updated evaluation of the respondent and an opportunity to present any evidence that may be gleaned therefrom. In this respect, the State argues that *Fields* is distinguishable.

¶ 63 We agree with the holdings in *Fields*. Pursuant to the Act, a dispositional hearing must be held. See *Fields*, 2012 IL App (1st) 112191, ¶ 73. The trial court's statement to the contrary was, therefore, in error. Nevertheless, the Act grants discretion to the trial court not to adjourn the proceedings where it believes neither a supplemental examination nor predisposition investigation is required in framing its commitment order. See *id.* We also agree that the Act does not allow the trial court to deny a respondent's right to present evidence and testimony at the dispositional hearing. See *id.*

¶ 64 However, we agree with the State that *Fields* is distinguishable. Further, we find that under the particular facts of this case vacating the commitment order is not required. Respondent herein has never indicated that he had a witness, or any evidence, to present at the dispositional hearing and was prevented from doing so. Before the trial court, counsel for respondent did not indicate the desire to call a witness or present any evidence. In his motion for new trial heard 47 days later, respondent did not name any witness or cite to any evidence that he was precluded from presenting. Lastly, at oral argument held approximately a year and a half after the denial of his motion for new trial, counsel for respondent was still unable to name a witness or cite to any evidence that it wished to present on the question of the appropriate commitment order. The only request made on behalf of respondent was for the matter to be continued so that a supplemental examination of respondent could be performed. The adjournment of the dispositional hearing for that purpose alone is within the sole discretion of the trial court. See *Fields*, 2012 IL App (1st) 112191, ¶ 73.

¶ 65 In *Fields*, respondent specifically indicated that it had a witness to present in support of a request for conditional release. The key to the *Fields* decision was the trial court's refusal to allow respondent to present testimony at the dispositional hearing. In so ruling, the *Fields* court acknowledged that the trial court had the authority to determine that a predisposition evaluation was unnecessary, but found that it was error not to give respondent the

-21-

opportunity to call his witness. In so holding, the *Fields* court distinguished *Winterhalter* and *Tittlebach* noting that in neither of those cases did the respondent indicate a desire to present testimony. See *Fields*, 2012 IL App (1st) 112191, ¶ 74.

¶ 66　　In fact the State here relies on *Winterhalter* in its effort to distinguish *Fields*. In *Winterhalter*, 313 Ill. App. 3d at 980, the trial court noted after the jury's verdict that a dispositional hearing had to be held. The respondent asked that the hearing be adjourned so that a doctor contracted with DHS could prepare a report on treatment recommendations. *Id.* The trial court denied that request finding that it had sufficient information on which to base its decision. *Id.* The trial court then asked counsel for each party if they wished to introduce any additional evidence. *Id.* When that question was answered in the negative, the trial court entered its commitment order. *Id.* On appeal, the Third District of this court held that as each side was given the opportunity to present evidence and declined, and then were allowed to argue on the question, this was sufficient for purposes of the Act. *Id.* at 981.

¶ 67　　We agree with the State that the facts of this case are more similar to those in *Winterhalter* than *Fields* in that the respondent was not denied the right to present any evidence. However, we acknowledge that in *Winterhalter* the trial court did allow argument on the issue of the correct commitment order. Here the opportunity to argue was much more limited. Counsel stated that there was an insufficient record upon which to make a decision on the correct placement, to which the trial court responded that it did not lack sufficient evidence to find that respondent would not be conditionally released at the time, given respondent's failure to begin sexual offender treatment.

¶ 68　　While lengthier argument would make this case more like *Winterhalter*, the inability to argue further has not been raised on appeal here and there has been no indication as to what arguments might have been made other than the one cited above concerning the need for a supplemental evaluation. In affirming the commitment order here, it is not our intention to approve of the abbreviated nature of the hearing held in this case. Recently, in *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 47, a case decided after this matter was heard in the trial court, this court communicated to the trial courts of this district that in the future, considering the serious consequences of the Act, the dispositional hearing provided for by the Act should not be treated as a mere formality.

¶ 69　　As a result of all of the above considerations, we decline to vacate the commitment order entered by the trial court here. In making this decision we are also cognizant, as we discussed at oral argument, that based on the relevant provisions of the Act, by the time of this court's decision, there presumably have been at least three periodic reexaminations conducted with regard to the respondent's progress. 725 ILCS 207/55 (West 2010). Further, due to the time that has passed, the provisions of section 60 of the Act (725 ILCS 207/60 (West 2010)), which allow for the filing of a petition for conditional release, are operative.

¶ 70　　　　　　　　　　　　　　　　　CONCLUSION

¶ 71　　The trial court did not abuse its discretion by declining to allow prospective jurors to be asked whether they could be fair and impartial knowing that respondent had been convicted of sexually violent offenses on three separate occasions. The State did not improperly argue

basis of opinion testimony concerning the details of respondent's offenses as substantive evidence and the trial court did not abuse its discretion by overruling objections and denying respondent's motion for a mistrial on this basis. The trial court did not abuse its discretion by rejecting respondent's proposed jury instruction which provided that the State has the burden of proving the allegations in the petition beyond a reasonable doubt and instead accepting the State's proposed jury instruction which provided that the State has the burden of proving beyond a reasonable doubt that respondent was an SVP; and (4) the trial court did not abuse its discretion in denying respondent's motion for mistrial based upon the State's alleged violation of an order *in limine* barring testimony that there had been a finding of probable cause to believe that respondent was an SVP. Respondent's right to a dispositional hearing was not violated where the trial court refused to continue the matter and order a supplemental evaluation and thus we decline to vacate the commitment order.

¶ 72       The judgment of the circuit court of Cook County is affirmed.

¶ 73       Affirmed.